UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-40187-RGS

SAYYID MUHAMMAD ABDULLAH
(a/k/a/ ANTHONY CONLEY),
PLAINTIFF,

v.

KIM LADUE, ET AL.,
DEFENDANTS.

MEMORANDUM AND ORDER
September 28, 2010

STEARNS, D.J.

For the reasons stated below: (1) within 21 days of the date of the Memorandum and Order, plaintiff shall pay the $350.00 filing fee or he shall file a completed Motion for Leave to Proceed *in forma pauperis* along with a certified prison account statement for the six-month period preceding the filing of the Complaint; (2) within 42 days of the date of this Memorandum and Order, plaintiff shall demonstrate good cause why this action should not be dismissed in its entirety, or he shall file an Amended Complaint curing the pleading deficiencies; and (3) the court declines to appoint counsel for plaintiff.

BACKGROUND

On September 16, 2010, plaintiff Sayyid Muhammad Abdullah ("Abdullah"), a state prisoner formerly in custody under the name "Anthony Conley" at the Massachusetts Treatment Center, and currently in custody at North Central Correctional Institution at Gardner ("NCCI-Gardner"), filed a skeletal self-prepared civil rights Complaint under 42 U.S.C. § 1983 against Worcester Superior Court Judge Peter W. Agnes, Jr., and Kim M. LaDue ("LaDue"), counsel for the Massachusetts Department of Mental Retardation

("DMR") (renamed the Department of Developmental Services on June 30, 2009) .[1]

Abdullah's Complaint fails to set forth his claims in any express fashion, and he fails to state what relief he seeks.  The Complaint contains nothing more than an identification of the defendants and a boilerplate statement of § 1983 law, along with a directive to "see his attached documentation."  This documentation consists of two case citations, with no apparent relevance to the instant action, as well as a transcript of Abdullah/Conley's probation revocation hearing on August 14, 2008 held in the Worcester Superior Court in the case Commonwealth of Massachusetts v. Anthony J. Conley, Docket No. WOCR2007-01464.  It appears that it is this probation revocation proceeding that gives rise to the instant action.  This court presumes that Abdullah now seeks to challenge the Worcester Superior Court's order revoking his probation and sentencing him to a term of incarceration in state prison.  The presiding judge in that proceeding was Judge Agnes, and  Kim M. LaDue, Esq. appeared on behalf of the DMR; both of these individuals are named as defendants in this action.

The transcript indicates that Abdullah was brought before the court for disposition of a violation of probation that had been found by the court in earlier proceedings.  The issue at the August 14, 2008 hearing was whether Abdullah should be placed on probation once again with different conditions, or whether he should be incarcerated for the probation violation.  The Commonwealth's concern was that Abdullah posed a "risk of harm," although the court deemed that the actual probation violations themselves were not that

---

[1]Abdullah is a frequent filer in this court, under the name Anthony Conley.  It appears he has changed his name to Abdullah for religious reasons.

serious because Abdullah did not violate criminal laws or physically assault someone.[2] The Commonwealth requested that Conley be incarcerated for 8 to 10 years, pursuant to the guidelines for the crime of indecent assault and battery of a child under 14, along with an order for lifetime parole supervision.   Conley's defense counsel argued against incarceration.

The DMR participated in the revocation proceedings because Abdullah has a limited mental capacity (functioning at a second or third grade level), and the DMR had been providing  services to him since the age of 14, including services in connection with his probation.  At the hearing, the DMR, though LaDue, took the position that it could no longer find a suitable housing placement for Abdullah if Judge Agnes placed him on probation once again, because, in its view, Abdullah had not cooperated with services provided by it.   Judge Agnes questioned whether the DMR had any legal obligation to continue to provide services to Abdullah and whether Abdullah had any right to enforcement of such services, but he did not make any findings in this regard.  In response to the court's inquiry about the DMR's declination to provide services, defendant LaDue stated that Abdullah did not comply with his treatment program at Community Resources for Justice (the contract provider with DMR) -- a program considered to be the "Cadillac" of the programs the MDR offered.  She also stated that Abdullah did not attend the programs offered, and he did not cooperate.  She stated that, in fact, he had made plans to leave the program, by shutting off the alarm in his room, and packing his clothes.  He was storing urine in his room, had a tarp, and was wearing army fatigues.  In short, because of Abdullah's non-cooperation,

---

[2]The violation was based on the impermissible contact with one Natalie Batts, the mother of Abdullah's child.

defendant LaDue stated that there was nothing left for the DMR to do for Abdullah, and that all options had been exhausted.

Based in part on defendant LaDue's statements, Judge Agnes found that there was no place to put Abdullah at that time, because the DMR could not help him and he could not be released to the streets or to some other unsupervised living situation.  Judge Agnes stated:

> Well, my distillation of all I've heard and all I know is that we have a gentlemen who has severe mental health deficits, let's say, as a result of long-standing condition.  There's no prospect for the defendant's intellectual functioning to substantially improve or improve at all, and that's an inhibitor in terms of his ability to comply with terms and conditions of probation, and maybe even his ability to live peacefully in accordance with the law.  But his record since he was placed on probation, regrettably, is that despite every effort made by the Probation Department, by the Department of Mental Retardation, and by the people under contract with them, that the defendant has not been able to conform his conduct to the requirements of law.  Now, on that case, the only other option is incarceration, unless a judgment is made that the violations are so trivial and the risk of harm is so slight that incarceration would be unjust and serve no valid reasons.   That's not this case, unfortunately.  I have to say I think that the Probation Department is correct in identifying Mr. Conley as a high-risk offender, and that's because his record suggests that he has not only committed serious offenses, but that, as I've just said, that he just does not have the wherewithal to conform to the requirements of the law.  And so I'm taking into account all I've heard and all I know, on the remaining count of indecent assault and battery, the Court imposes a sentence of not less than five, no[r] more than eight years to State Prison.

Transcript (Docket No. 1 at 27-28 (transcript pages 23-24)).

Abdullah failed to pay the $350.00 filing fee or to file a Motion for Leave to Proceed *in forma pauperis*.

DISCUSSION

    A.    <u>The Filing Fee</u>

A party bringing a civil action must either (1) pay the $350.00 filing fee, <u>see</u> 28 U.S.C. § 1914(a); or (2) seek leave to proceed without prepayment of the filing fee, <u>see</u> 28 U.S.C. § 1915 (proceedings *in forma pauperis*).  Where, as here, Abdullah is a prisoner as defined by 28 U.S.C. § 1915(h), a motion for waiver of prepayment of the filing fee must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined."  28 U.S.C. § 1915(a)(2).[3]

Accordingly, within 21 days of this Procedural Order, Abdullah either shall (1) pay the $350.00 filing fee; or (2) file an application to proceed *in forma pauperis* accompanied by a <u>certified</u> prison account statement.  Failure of Abdullah to comply with this directive may result in the dismissal of this action.

This court is aware that Abdullah has had difficulties in complying with the filing fee directives in his prior litigation.  <u>See</u> <u>Conley v. Department of Mental Retardation</u>, Civil Action No. 09-1071-JLT.  Nevertheless, Abdullah is warned that strict compliance with the

---

[3]Unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the $350.00 filing fee, notwithstanding the grant of *in forma pauperis* status.  Based on the information contained in the prison account statement, the court will direct the appropriate prison official to withdraw an initial partial payment from the plaintiff's account, followed by payments on a monthly basis until the entire $350.00 filing fee is paid in full.  <u>See</u> 28 U.S.C. § 1915(b)(1)-(2).  Even if the action is dismissed upon a preliminary screening, <u>see</u> 28 U.S.C. §§ 1915(e)(2), 1915A, the plaintiff remains obligated to pay the fee, <u>see</u> <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 607 (6th Cir. 1997) (§ 1915(b)(1) compels the payment of the fee at the moment the complaint is filed).

requirement to file an *in forma pauperis* Affidavit and to submit a <u>certified</u> prison account statement for the six-month period preceding the filing of his Complaint is mandated.  He will not be given opportunities, *ad seriatim* (as in his prior civil action) to comply with the filing fee requirements, and failure to do as directed will result in a dismissal of this action.

The Clerk shall provide Abdullah with the standard Application to Proceed Without Prepayment of Fees and Affidavit.

The Clerk shall also send a copy of this Procedural Order to the Treasurer's Office at NCCI-Gardner, in order to facilitate any request by him for his certified prison account statement.  The court requests that the Treasurer's Office include in any prison account statement Abdullah's average monthly deposits for the six-month period preceding the date the complaint was filed, as well as the average monthly balance for that same period.

B.   <u>The Court May Screen The Complaint</u>

Because Abdullah is not proceeding *in forma pauperis* at this time, the court screens the Complaint pursuant to 28 U.S.C. § 1915A.  Section 1915A authorizes the court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

In screening the Complaint, Abdullah's *pro se* pleadings are construed generously. <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980);  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Instituto de Educacion Universal Corp. v. U.S. Dept. of Education</u>, 209 F.3d 18, 23 (1st Cir.

2000).  Even under a generous reading, however, this action is subject to dismissal for the reasons stated below.

###    C.    Failure to Set Forth Claims Under Fed. R. Civ. P. 8(a)

Rule 8(a) requires a plaintiff to include in a complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).   It must afford the defendant(s) a "[']meaningful opportunity to mount a defense.'"  Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004)(quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  See Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005).  "In a civil rights action as in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why."  Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule 8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'"  Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).[4]

---

[4]As the United States Supreme Court has recently stated, under Rule 8, a plaintiff must plead more than a mere allegation that the defendant has harmed him.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" quoting Twombly, 550 U.S. at 555).  See Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' [citing Maldonado v. Fontanes], 568 F.3d 263, 268 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).").

Here, Abdullah's Complaint is beyond sparse -- it does not remotely meet the required pleading standards.  Although he identifies the defendants, Abdullah fails to assert essential factual information necessary to set forth any plausible claims upon which relief may be granted with respect to each named defendant.  He also fails to set forth the type of relief sought (*e.g.,* habeas, injunctive, or monetary damages).

This court is not required to frame Abdullah's Complaint for him, and his mere reference to attached documents is insufficient to meet the pleading requirements of Rule 8.  See Terrance v. Cuyahoga County, 2005 WL 2491531 at *1 (N.D. Ohio 2005) citing Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) ("District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments.").[5]   Even if this court inferred that Abdullah is attempting to raise a constitutional claim based on his revocation of probation and resulting incarceration because of the DMR's counsel's statements at the revocation hearing *(i.e.*, that there were no longer services or placement available for Abdullah), the Complaint simply fails to set forth any grounds from which a constitutional violation on that basis

---

[5]See also McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979) (court is not required to "conjure up unpled allegations," notwithstanding duty to be less stringent with *pro se* complaints).  Such an exercise by the court would "'require ... [the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, ... [and] would ... transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  Terrance, 2005 WL 2491531, at *1, quoting Beaudett, 775 F.2d at 1278.  See also Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989) ("It is certainly reasonable to ask that all plaintiffs, even *pro se* plaintiffs,.... alert party defendants that they may be individually responsible in damages.  The trial and appellate courts should not have to guess at the nature of the claim asserted.").   "The failure to identify a particular legal theory ... places an unfair burden on the defendant to speculate on the potential claims that plaintiff may be raising against it and the defenses it might assert in response to each of these possible causes of action." Terrance, 2005 WL 2491531, at *1.

reasonably could be inferred.

In short, Abdullah's Complaint fails to meet the pleading requirements for proceeding in this court, and his claims are subject to dismissal pursuant to 28 U.S.C. § 1915A.

Notwithstanding these pleading deficiencies, there are other legal deficiencies barring his claims against defendants Judge Agnes and LaDue.

D.   Absolute Judicial Immunity Bars Claims Against Judge Agnes

Abdullah's § 1983 claims against Worcester Superior Court Judge Agnes (construed to be due process violations in connection with Judge Agnes's revocation of probation) are not cognizable because absolute judicial immunity protects judges from acts performed within the scope of their jurisdiction.  Mireles v. Waco, 502 U.S. 9, 11 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage."); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (absolute judicial immunity protects integrity of judicial process); Allard v. Estes, 197 N.E. 884, 886 (1935) (stating that is it "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law.").  The reason for recognizing this form of immunity is that:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

9

<u>Gallas v. Supreme Court of Pennsylvania</u>, 211 F.3d 760, 768 (3d Cir. 2000) (quoting <u>Forrester v. White</u>, 484 U.S. 219, 226-27 (1988)).

Although Abdullah may believe that Judge Agnes erred in his judgment that he presented a serious risk of harm to himself or the public, and/or that the DMR gave false information in representing the lack of services available to him, there is no reasonable or credible allegation, nor could there be, that the actions by Judge Agnes were outside the scope of his jurisdiction.  Again, while not set forth clearly, Abdullah's claims apparently stem solely from adverse rulings in connection with judicial proceedings within the scope of Judge Agnes's jurisdiction.  Even if Judge Agnes erred in his decision, this would not constitute the type of extra-judicial activity exempting him from entitlement to absolute judicial immunity.

Accordingly, Abdullah's claims against Judge Agnes are subject to dismissal pursuant to 28 U.S.C. § 1915A.

     E.    <u>Favorable Termination Rule Bars Claims Against MDR Counsel</u>

As noted above, it is unclear why Abdullah has asserted claims against defendant LaDue, as he has made no factual allegations whatsoever with respect to this defendant. Presuming, however, that he bases his § 1983 claim on the assertion that she wrongfully reported to Judge Agnes that the DMR could not find any suitable housing placement for him if placed back on probation (thus leading Judge Agnes to find that he had no other alternative but to incarcerate Abdullah for the probation violation), this § 1983 claim is not ripe because Abdullah has not received a favorable termination of his sentence of incarceration.  In the context of claims that challenge the lawfulness of confinement and/or

seek monetary damages therefor, it is well-settled that a civil rights claim under 42 U.S.C.

§ 1983 does not accrue unless the prisoner has obtained a favorable termination of the

underlying conviction, parole, disciplinary action or condition of confinement.  See Heck v.

Humphrey, 512 U.S. 477 (1994).  Under the so-called "Favorable Termination Rule:"

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Heck, 512 U.S. at 486-87 (footnote omitted).[6]  Without such a showing of a favorable

termination, a prisoner's cause of action under § 1983 has not yet accrued.  Id. at 489.

The Favorable Termination Rule has been extended to a wide variety of prisoner

challenges to state disciplinary and parole procedures where success "would, if

established, necessarily imply the invalidity of the deprivation...."  Edwards v. Balisok, 520

U.S. 641, 646 (1997).  When considering the potential intersection of habeas relief and

§ 1983 claims:

> ... the [Supreme] Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement -either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody.

Wilkinson v. Dotson, 544 U.S. 74, 81 (2005).  Therefore, "a state prisoner's § 1983 action

is barred (absent prior invalidation) -- no matter the relief sought (damages or equitable

---

[6]"Heck uses the word 'sentence' interchangeably with such other terms as 'continuing confinement' and 'imprisonment.'"  Wilkinson v. Dotson, 544 U.S. 74, 83 (2005).

relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."  Id. at 81-82.

Under Heck and its progeny, a claim under § 1983 that would necessarily imply the invalidity of the states' deprivation, punishment or duration of confinement, may not be brought unless and until the condition is reversed.  In other words, if success under a § 1983 claim would either directly or indirectly result in speedier release, which properly lies at "the core of habeas corpus," it cannot be brought under 42 U.S.C. § 1983.  Id. (citing Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)).

Here, a determination that LaDue's representations resulted in a deprivation of Abdullah's liberty could, either directly or indirectly, serve as a basis to invalidate his probation revocation sentence.  As such, Abdullah's claims against LaDue cannot be raised under § 1983 until he receives a favorable termination of his sentence through direct or collateral attacks.[7]

---

[7]Abdullah also fails to set forth that he does not have an adequate state court remedy. See Zinermon v. Burch, 494 U.S. 113, 126 (1990);  Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 541 (1981); O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000);  Riordan v. Martin, 51 F.3d 264 (1st Cir. 1995) (unpublished disposition) ("Since inadequacy of the state's remedy is a material element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual allegations, either direct or inferential, to sustain an actionable legal theory." citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  As a rule, deprivations caused by the random, unauthorized acts of state officials are not actionable where an adequate post-deprivation remedy is available.  "[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." Parrat, 451 U.S. at 539. See Hudson, 468 U.S. at 533 ("The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct."); Gilbert v. Homar, 520 U.S. 924, 930 (1997) ("This Court has recognized, on

Accordingly, Abdullah's claims against LaDue are subject to dismissal.[8]

F.     Order to Show Cause or File an Amended Complaint

In light of the above, it is hereby ORDERED that, within 42 days of the date of this Memorandum and Order, Abdullah shall demonstrate good cause why this action should not be dismissed in its entirety for failure to plead plausible claims in accordance with Rule 8 of the Federal Rules of Civil Procedure, and for failure to state claims upon which relief may be granted because Judge Agnes is immune from suit, and because his claims against Kim LaDue have not accrued because he has not received a favorable termination of his sentence. Abdullah may file an Amended Complaint curing the pleading deficiencies if he is able to do so, bearing in mind that Judge Agnes is entitled to absolute judicial immunity for actions taken within the scope of his jurisdiction. Any Amended Complaint shall clearly identify cause of action asserted against each defendant, along with a brief statement of the facts upon which his claims are based, and a statement of the type of relief sought.

Failure to comply with this directive will result in the dismissal of this action.

G.     Declination to Appoint *Pro Bono* Counsel

Assuming that Abdullah may requested court-appointed counsel to respond to the directives contained in this Memorandum and Order, this court has considered whether appointment of counsel is warranted at this time. Under 28 U.S.C. § 1915(e)(1), the court

---

many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause.").

[8]At this juncture, the court need not address the issue whether counsel for the DMR is a state actor for § 1983 purposes, or whether she has qualified immunity for making representations in response to Judge Agnes's request.

"may request an attorney to represent any person unable to afford counsel." 28 U.S.C.

§ 1915(e)(1).[9]   However, a civil plaintiff lacks a constitutional right to free counsel.

Desrosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).  In order to qualify for appointment

of counsel, a party must be indigent and exceptional circumstances must exist such that

denial of counsel will result in fundamental unfairness impinging on the party's due process

rights.  Id.  To determine whether exceptional circumstances sufficient to warrant the

appointment of counsel are present in a case, the court must examine the total situation,

focusing on the merits of the case, the complexity of the legal issues, and the litigant's

ability to represent him or herself.  Id. at 24.

This court has considered the transcript of Abdullah's probation revocation hearing

reflecting that Abdullah has been a client of the DMR since the age of 14 due to his mental

limitations (he functions at a low level); however he does not suffer from a mental illness.

The court also has considered that it is likely that Abdullah could demonstrate that he lacks

sufficient funds to retain counsel in this matter, and that he is a prisoner who lacks legal

skills and knowledge of the law.   Nevertheless, the court does not find, based on the

dubious merits of this action, that it would be a prudent use of scarce *pro bono* resources

to appoint counsel for Abdullah in this matter.   Thus, at this juncture, the court cannot find

that exceptional circumstances exist warranting appointment of *pro bono* counsel in this

case.  While Abdullah's inability to pursue his claims *pro se* is no doubt difficult for him, the

---

[9]In this District, there is no Plan authorizing the payment for counsel appointed for civil litigants such as the Plaintiff. Any appointment of counsel would therefore be contingent upon the availability of *pro bono* counsel to accept voluntarily an appointment. *cf.* 18 U.S.C. § 3006A (providing for appointment of counsel in habeas petitions under 28 U.S.C. § 2241, § 2254 and motions under § 2255 and for payment under the Criminal Justice Act).

use of *pro bono* resources is not justifiable.

 Accordingly, this court declines to appoint *pro bono* counsel for Abdullah.

CONCLUSION

 Based on the foregoing it is hereby ORDERED that:

1. Within 21 days of the date of the Memorandum and Order, plaintiff shall pay the $350.00 filing fee or he shall file a completed Motion for Leave to Proceed *in forma pauperis* along with a certified prison account statement for the six-month period preceding the filing of the Complaint;

2. Within 42 days of the date of this Memorandum and Order, plaintiff shall demonstrate good cause why this action should not be dismissed for the reasons stated herein, or file an Amended Complaint curing the pleading deficiencies; and

3. The court declines to appoint *pro bono* counsel in this action.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE